UNITED STATES, Appellant

v

WALTER J. HIGBIE, Recruit, U. S. Army, Appellee

12 USCMA 298, 30 CMR 298

First Lieutenant *Harvey L. Zuckman* argued the cause for Appellant, United States. With him on the brief were Lieutenant Colonel *James G. McConaughy* and Captain *William A. Zeigler.*

First Lieutenant *Richard A. Baenen* argued the cause for Appellee, Accused. With him on the brief was Lieutenant Colonel *Ralph Herrod.*

## Opinion of the Court

HOMER FERGUSON, Judge:

At his original trial, the accused was found guilty of larceny, in violation of Uniform Code of Military Justice, Article 121, 10 USC § 921; housebreaking, in violation of Code, supra, Article 130, 10 USC § 930; and false swearing, in violation of Code, supra, Article 134, 10 USC § 934. He was sentenced to dishonorable discharge, forfeiture of all pay and allowances, and confinement at hard labor for three years.

On review, the convening authority determined that the specification purporting to allege false swearing did not set forth an offense. For this reason and because of possible command control, with respect to the sentence proceedings of the former court-martial, he approved only the findings of guilty of larceny and housebreaking and ordered a rehearing on the penalty. At the rehearing, the law officer properly instructed the court-martial that the maximum sentence which it might adjudge could not exceed dishonorable discharge, forfeiture of all pay and allowances, and confinement at hard labor for three years. The court sentenced accused to dishonorable discharge, forfeiture of all pay and allowances, and confinement at hard labor for two years.

On further review, the staff judge advocate extensively discussed accused's military and civilian background and recommended approval of the sentence adjudged. No mention was made of the specification and Charge previously dismissed. The convening authority approved the sentence.

The board of review, adverting to the fact that the convening authority did not indicate whether he had considered the question of the appropriateness of the punishment in light of his prior disapproval of a finding of guilty, upon the basis of the entire record reduced the period of confinement adjudged to one year, but otherwise affirmed the findings and sentence. Thereupon, The Judge Advocate General of the Army certified the following question to this Court:

"WAS THE BOARD OF REVIEW CORRECT IN REASSESSING THE SENTENCE ON THE GROUND THAT THE CONVENING AUTHORITY CONSIDERED THE SENTENCE ORIGINALLY ADJUDGED FOR THREE OFFENSES AS THE LIMIT APPLICABLE TO THE TWO REMAINING OFFENSES?"

The pertinent portion of the board of review's opinion reads as follows:

"*In considering the appropriateness of the sentence, we are mindful of certain matters which we shall discuss.* At the original trial, the court was instructed that the maximum authorized confinement was thirteen years: five years each for larceny and housebreaking and three years for false swearing. The law officer instructed the court, at the rehearing, that confinement in excess of three years could not be adjudged. There is no provision of law which authorizes a law officer to proportion the sentence originally adjudged to

**299**

the offenses remaining on rehearing, and we do not believe a provision authorizing such apportionment would be practicable. Therefore, we believe his instructions were proper. See Article 63, which provides that upon a rehearing, 'no sentence in excess of or more severe than the original sentence shall be imposed' unless the sentence is based upon an offense not considered at the prior hearing. However, we are concerned by the question whether the spirit of Article 63, if not the letter, was violated by considering the sentence adjudged for three offenses as the limit applicable to the two remaining offenses.

"The convening authority is given the duty by Article 64 to approve only so much of a sentence 'as he finds correct in law and fact and as he in his discretion determines should be approved.' We find no indication that, in connection with his determination of appropriateness, he considered the question of reassessing the sentence in the light of his prior disapproval of one finding of guilty. We do not criticize his failure to reassess, because we have found no prior case in which the specific question was presented.

"We believe that any possible prejudice to the accused can be overcome by our reassessment of the sentence in the light of these circumstances, since a board of review has 'the authority to determine the appropriateness of the sentence' including 'the right to make the determination regardless of the action on the findings, in all cases where the sentence is one which the board is authorized to change.' *United States v Stene,* 7 USCMA 277, 281, 22 CMR 67, 71 (1956).

"*Considering the foregoing and the entire record in this case, the Board of Review is of the opinion that no greater sentence than dishonorable discharge, forfeiture of all pay and allowances, and confinement at hard labor for one year is appropriate* and should be approved. The Board of Review finds that the findings and the sentence as here modified are correct in law and in fact and should be approved." [Emphasis partially supplied.]

It will be seen from the foregoing that the board of review in discussing the question of the convening authority's action was dealing with the issue of the appropriateness of the adjudged and approved penalty. While it referred to the possible influence of the dismissed charge and specification upon the convening authority in approving the sentence, it specifically based its reduction of the period of confinement upon both this consideration and "the entire record in this case." It found, on that basis, the modification to be correct in law and fact. It is clear, therefore, that the board's action was taken unambiguously on the basis of the whole record and is safely within the ambit of its plenary authority to determine anew the appropriateness of the sentence. Under the circumstances, the exercise of its discretion may not be utilized to create a certified question reviewable by this Court. United States v Bedgood, 12 USCMA 16, 30 CMR 16; United States v Armbruster, 11 USCMA 596, 29 CMR 412. In short, where a board of review bases a determination of appropriateness of sentence upon the entire record, one of the many factors it considered may not be dissected out in order to have us pass upon a certified issue, the answer to which cannot affect the board's ultimate decision. See United States v Jones, 10 USCMA 532, 533, 28 CMR 98.

The decision of the board of review is affirmed.

Chief Judge QUINN concurs.

LATIMER, Judge (dissenting):

I dissent.

I am convinced that everyone who has played a part in this appeal concedes the authority of a board of review to reduce a sentence to a level it believes appropriate, when its scales are not unbalanced by an error of law. A board not only has that power but, indeed, the duty to do so. See Article 66(c), Uniform Code of Military Justice, 10 USC § 866. However, the present opinion is

authority for the proposition that scales thrown out of balance by legal misconceptions may be used, and with that concept I disagree. By any fair interpretation, this record establishes beyond doubt that the board's assessment was based principally on an erroneous legal conclusion. The very essence of its opinion is that the convening authority erred when he affirmed the sentence imposed by the court-martial without considering his prior disapproval of one finding of guilty. My brothers do not discuss the legality or illegality of that holding as they conclude a resolution is not necessary. I believe to the contrary for if the board erred on that aspect of the case, the whole understructure for its assessment of sentence gives way.

To better present my views, it is necessary to relate a few unmentioned facts. There are two staff judge advocate's reviews which were considered by the same convening authority. The first covered the three original offenses, and it informed the convening authority that the maximum sentence for the valid findings was dishonorable discharge, ten years' confinement, total forfeitures, and reduction to Recruit E–1. It further informed him that the sentence adjudged by the court-martial was dishonorable discharge, three years' confinement, and total forfeitures. It then went on to state that one specification did not state an offense and that, because of possible command control, the inadequate specification should be dismissed and the case referred to a newly composed court-martial for a rehearing on sentence. The convening authority followed the recommendation, and I quote the action signed by him:

"In the foregoing case of Recruit (E–1) Walter J. Higbie, RA 16 655 517, US Army, Company D, 2d Armored Rifle Battalion, 58th Infantry, 2d Armored Division, Fort Hood, Texas, the findings of guilty of Charges I and II and their Specifications are approved. The findings of guilty of Charge III and its Specification are disapproved for failure to state an offense. In order to prevent any possibility of injustice and in order that the rights of the accused will be fully protected, the sentence is disapproved and a rehearing as to the sentence only is ordered before another court-martial to be hereafter designated."

The newly appointed court was properly advised that the maximum imposable sentence was dishonorable discharge, three years' confinement, and total forfeitures, and it is to be noted that the maximum period of confinement was much less than the ten-year period permitted by the Table of Maximum Punishments, because the ceiling was lowered by the original sentence. The punishment inflicted by the second court-martial was the same as the first, except the period of confinement was reduced to two years. The staff judge advocate's review for this rehearing was furnished to the same officer who had limited consideration of sentence to the two remaining offenses, and it specifically set out the two crimes and the correct maximum punishment and noted that the limits were as indicated because this was a rehearing. The review was complete in all respects, and it would be impossible to read it even cursorily and not understand that any action on the sentence had to be based on the only two offenses being considered. In the absence of positive information to the contrary, it is inconceivable to me that the convening authority would likely forget his first action in dismissing one specification. However, all doubt is laid to rest when the second action signed by him is considered. It contains this statement:

". . . The accused will be credited with confinement from 2 August 1960 to 7 September 1960 and any other portion of the sentence served or executed from 2 August 1960 to 7 September 1960, under the sentence adjudged at the former trial of this case."

But that is not all, for here the reason the convening authority did not reduce the sentence, instead of granting a rehearing when he first considered the record, was because of the possibility of undue influence on the original court members arising out of a letter which he circulated but subsequently

**301**

had to retract. I have every reason to believe that in such a touchy situation the convening authority would not have failed to remember all that had previously transpired.

I have outlined generally some of the facts which stud this record and my summarized statement ought to establish firmly that the board was wrong indeed when it concluded there was "no indication that, in connection with his determination of appropriateness, he considered the question of reassessing the sentence in the light of his prior disapproval of one finding of guilty." Certainly, if he did not use a proper yardstick, he shut his eyes to the obvious and failed to understand the clear and explicit language to which he had subscribed on two separate occasions.

From what I have said above, it should be apparent that I believe the board erred and, based on that premise, I answer the arguments of my associates. The relevant parts of the board's decision are set out in their opinion, and certain portions are italicized. The statements so identified, when isolated from other parts of the decision, give some color to the views of my brothers. However, when the board's opinion is considered by its four corners, the color fades and the conclusion reached by my brothers is unsupportable. As previously noted, the only issue discussed by the board is the error of the convening authority and its possible prejudice. Significantly, the board commences its dissertation on the law with this statement, "In considering the appropriateness of sentence, we are mindful of certain matters which we shall discuss." Thereafter, the only matter mentioned which could fall within the sweep of that statement is the aforementioned error. Therefore, it seems to follow logically that the board members were concerned only with modifying the sentence to purge the prejudicial effect of the convening authority's failure to state in his second action that he was cognizant of the prior things done by him.

True it is that in winding up the opinion, the board of review used this phrase, "Considering the foregoing and

the entire record in this case, the Board of Review is of the opinion that no greater sentence than . . . should be approved." The language is in the conjunctive and so I conclude the board gave weight to both. But the opinion rationalized on the mountain and any other matters in the record covered by the catchall phrase composed a molehill. This conclusion seems to be supported by the board's failure to mention any extenuating or mitigating factors which would cause it to extend leniency. Significantly, if it considered any facts or circumstances other than the error it found which rendered the approved sentence inappropriate, it would have been an easy matter for the board of review to have spread them on the record.

This board's decision is not on all fours with the one found in the companion case of United States v Foti, 12 USCMA 303, 30 CMR 303, decided this day. There the board's opinion set out some extenuating and mitigating factors on which it relied to lessen the penalty imposed on the accused. In the case at bar, the failure to mention matters influencing clemency is striking, and the use of a savings clause for a makeweight is not without reason. This accused had two previous convictions, his offenses were aggravated, he tried to justify his theft by making false criminal accusations against the victim, he was neither interested in rehabilitation nor retention in the Army, and the only evidence in mitigation or extenuation was a letter from his mother which offered little in the way of palliating circumstances. Aside from his age, one would be hard pressed to find any fact or particular item in this record which would call for mercy. The net of all this is that the board of review used a measuring rod in assessing the appropriateness of sentence which was fashioned from the board's own legal error. An assessment of sentence under those circumstances should not be permitted to stand. A board of review should be required to use a proper legal yardstick, and particularly would I require a reassessment of sentence when patently a sentence has been reduced to purge the preju-

302

dicial effect of a prior error when, in law, there is no mistake to correct.

I would answer the certified question in the negative and return the record of trial to the board of review to reassess sentence on an appropriate basis.